HULMAN FOUNDATION, INC., Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. TH 61–C–61.

United States District Court
S. D. Indiana,
Terre Haute Division.

July 2, 1962.

As Amended July 27, 1962.

**424**

Marshall, Batman & Day, Terre Haute, Ind., for plaintiff.

Richard P. Stein, U. S. Atty., Indianapolis, Ind., for defendant.

HOLDER, District Judge.

This case was submitted to the Court for trial on the issues set forth in the plaintiff's complaint filed September 13, 1961, and supplemental complaints filed January 25, 1962, and June 12, 1962, as joined by the defendant's answer filed November 10, 1961, as amended in pre-trial conference on January 5, 1962, and by defendant's declaration of issues filed January 19, 1962. The trial was commenced on January 25th and continued through January 26th, 1962, and adjourned to February 6, 1962, when the evidence was concluded and the matter was continued for post-trial briefing and final argument.

The Court having considered the evidence, the credibility of the witnesses, and the briefs of the parties (final argument having been waived on June 14, 1962) does now file its

## FINDINGS OF FACTS

1. The parties stipulated that the Court has jurisdiction of the parties and of the subject matter.

2. The plaintiff at all times in question was a duly qualified Indiana corporation organized on December 10, 1940 under "The Indiana General Not-For-Profit Corporation Act" with its principal office and place of business in the City of Terre Haute, Vigo County, Indiana.

The purpose or purposes for which it is formed are as follows:

"a. To promote educational, literary, scientific, religious and charitable purposes.

"b. To receive by gift, devise, bequest or otherwise, any money or other property absolutely or in trust to be used either as to principal or income therefrom, or both, for the furtherance of any of the above mentioned purposes as designated in these articles, and in accordance with the purposes declared in the instrument of gift, devise, bequest, or other assignment, conveyance or transfer, to change the form of investment, except as prohibited by the terms of any instrument of gift, devise, bequest or other transfer, and for that or other purposes of the corporation to dispose of any securities or real estate or other purposes of the corporation to dispose of any securities or real estate or other property held by such corporation.

"c. In general, to do any and all things necessary and proper to carry out the objects for which the corporation is formed and to have and exercise all the rights, powers and privileges which are now, and may hereafter be conferred by the laws of the State of Indiana upon similar corporation; to execute from time to time general or special powers of attorney, to persons, firms or corporations, and to revoke the same, subject to the will of the Board of Directors, and to do all things heretofore set forth in the same manner as natural persons might or could do.

"d. The foregoing clauses shall be construed both as objects and powers, and unless otherwise expressly provided, the objects or powers therein specified shall in no wise be limited or restricted by reference to or inference from the terms of any other clause or clauses in these articles and the enumeration of specific powers therein shall not be held to limit or restrict in any manner the powers of this corporation, but the same will in furtherance of, and in addition to, and not in

limitation of the general powers of this corporation.

"e. All of the above and foregoing purposes, not being exclusive but consistent with the limitations and privileges as set forth in 'Indiana General Not For Profit Corporation Act', can be used when necessary, convenient and expedient, to accomplish the purposes for which this corporation is formed."

The incorporators and at all times in question the directors were as follows:

> Joseph R. Cloutier
> Anton Hulman, Jr.
> Ralph Horton

3. Prior to December 30, 1941, the plaintiff filed with the United States Treasury Department an application for exemption from Federal income taxes under Section 101(6) of the Internal Revenue Code of 1939. On December 30, 1941, the United States Treasury Department ruled that plaintiff was exempt, which ruling is quoted as follows:

"Hulman Foundation, Inc.
Wabash Ave., and Ninth Street,
Terre, Haute, Indiana.

"Sirs:

"It is the opinion of this office, based upon the evidence presented, that you are exempt from Federal income tax under the provisions of section 101(6) of the Internal Revenue Code and corresponding provisions of prior revenue acts.

"Accordingly, you will not be required to file returns of income unless you change the character of your organization, the purposes for which you are organized, or your method of operation. Any such changes should be reported immediately to the collector of internal revenue for your district in order that their effect upon your exempt status may be determined.

"Since any organization that is exempt from Federal income tax under the provisions of section 101 of the Internal Revenue Code also is exempt from the capital stock tax pursuant to the express provisions of section 1201(a) (1) of the Internal Revenue Code, you will not be required to file capital stock tax returns for future years so long as the exemption from income tax is effective. Furthermore, under substantially identical authority contained in sections 1426 and 1607 of the Code and/or corresponding provisions of the Social Security Act, the employment taxes imposed by such statutes are not applicable to remuneration for services performed in your employ so long as you meet the conditions prescribed above for retention of an exempt status for income tax purposes.

"Contributions made to you are deductible by the donors in arriving at their taxable net income in the manner and to the extent provided by section 23(o) and (q) of the Internal Revenue Code and corresponding provisions of prior revenue acts. Bequests, legacies, devises or transfers to or for your use are deductible in arriving at the value of the net estate of a decedent for estate tax purposes in the manner and to the extent provided by sections 812(d) and 861(a) (3) of the Code and/or corresponding provisions of prior revenue acts. Gifts of property to you are deductible in computing net gifts for gift tax purposes in the manner and to the extent provided in section 1004(a) (2) (B) and 1004(b) (2) and (3) of the Code and/or corresponding provisions of prior revenue acts.

"The collector of internal revenue for your district is being advised of this action.

"By direction of the Commissioner.

> "Respectfully,
> Deputy Commissioner"

4. On January 12, 1956, the defendant revoked its ruling of December 30,

1941 for each of the years 1951, 1952, 1953 and 1954, and subsequent years. The revoking letter of defendant is quoted as follows:

"Hulman Foundation, Inc.
Wabash Avenue and Ninth Street
Terre Haute, Indiana

"Gentlemen:

"This refers to your protest and to the conference held in this office with your representatives concerning the recommendation of the District Director of Internal Revenue at Indianapolis, Indiana that your exempt status under section 101(6) of the 1939 Internal Revenue Code (corresponding to section 501(c) (3) of the 1954 Code), to which you were held to be entitled in our ruling of December 30, 1941, be revoked for years 1951, 1952 and 1953 for unreasonable accumulation of income within the meaning of section 3814 of the 1939 Code (corresponding to section 504 of the 1954 Code).

"The information before us shows that you were incorporated December 13, 1940, under the laws of the State of Indiana, to promote educational, literary, scientific, religious and charitable purposes. To effectuate such purposes, you have made donations from time to time to other organizations and entities organized and operated in furtherance thereof.

"The information before us regarding your operations shows that for the first ten years thereof, that is, from 1940 through 1950, your total receipts amounted to $6,570,-334.29. Of this amount, $2,150,-398.90 represented gifts of cash and securities; $1,606,417.62, dividends; $56,957.99, interest; $5,235.95, profit on sale of securities; and $3,-351,323.83, advances or loans from the Hulman Company, of which your officers and directors are principal stockholders and officers. During the same period donations of $477,253.05 were made by you in furtherance of the purposes stated above and the amount of $84.46 was distributed for expenses, resulting in an excess of receipts of $6,092,-996.78. Exclusive of the gains on the sale of securities, your income receipts for the ten year period amounted to $1,063,375.61. The percentage of donations to income during such period was approximately 44.88 percent.

"For the years 1951 through 1953, your total receipts amounted to $1,-197,043.27, divided as follows: contributions, $356,539.93; dividends, $579,612.77; interest, $64,100.50; and profit on sales on securities, $196,790.07. Disbursements for the three year period which totaled $1,-859,521.75, included $1,786,403.55 for repayment of advances made to you by the Hulman Company, $69,-800.00 for donations, and $3,318.20 for expenses. Exclusive of profit on gains of sale of securities, your income receipts for the three year period amounted to $643,713.27. The proportion of donations to income for such period was approximately 10.84 percent.

"The information return, Form 990A, filed by you for the year 1954 reflects gross receipts of $255,-262.46, which include the following: interest, $7,758.60; dividends, $235,820.27; and gains on sales on securities, $11,683.59. Disbursements for such year were $1,174.30 for expenses and $40,394.62 for donations. Exclusive of the gain on sale of securities, income not distributed for exempt purposes during such year amounted to $202,-009.95.

"Though gains on sales of securities have not been considered in computing the amount of income accumulated, a conclusion should not be drawn therefrom that all or any part thereof are properly excludible for tax purposes.

"It is shown that from an amount of $81,905.00 at the close of your

first year of operation, your net worth had increased, at December 31, 1953, to the amount of $3,865,-598.02, representing the excess of your assets (cash, securities and notes receivable) over advances owing and payable to the Hulman Company.

"With respect to the advances obtained from the Hulman Company, you state that such indebtedness was incurred to improve your financial position and earning power. These advances were noninterest bearing and were carried as open book accounts by the Hulman Company, with no written evidence of indebtedness being executed by you for the repayment thereof. The first sums borrowed were in the year 1945, with substantial amounts being borrowed in the years 1949 and 1950. However, no payments were made in such years, the first repayment being made in the year 1951. It is also indicated that additional amounts were borrowed by you from the Hulman Company in 1954.

"A recapitulation of your operations for the years 1951 through 1954 reflects income receipts, exclusive of gains on sale of securities, totaling $887,292.14 as compared with donations of $110,194.62 for charitable purposes.

"Subsequent to the conference held in this office with your representatives, you submitted a proposal to the effect that should your exempt status for the years 1951 through 1954 not be disturbed, all indebtedness presently owing by you, approximately $1,800,000.00 would be discharged prior to the end of the year 1955, to be accomplished through the sale of some of your income-producing securities. You propose to distribute your income for the year 1955 to the extent of 95 percent or more thereof for the charitable purposes for which you were organized, such distribution to be accomplished within the calendar year, or not later than January 31, 1956.

"In addition, further correspondence has been received by us setting forth a proposed plan to underwrite the construction costs of a field house for the use of the public schools in Terre Haute, the estimated cost of which is $1,250,000.00. You state that to accomplish this within a reasonable period, it will be necessary to use part of your principal, as well as your earnings, during construction.

"Section 501(c) (3) provides for the exemption of corporations organized and operated exclusively for the purposes provided for in such section of the law.

"Section 504 of the Code states, in part, as follows:

"'In the case of any organization described in section 501(c) (3) to which section 503 is applicable, exemption under section 501 shall be denied for the taxable year if the amounts accumulated out of income during the taxable year or any prior taxable year and not actually paid out by the end of the taxable year—

"'(1) are unreasonable in amount or duration in order to carry out the charitable, educational, or other purpose or function constituting the basis for exemption under section 501(a) of an organization described in section 501(c) (3); * * *'

"An organization claiming exemption under section 501(c) (3) of the Code, which is not excepted from the provisions of section 504, and which uses income to retire indebtedness incurred in the acquisition of property is considered to be accumulating income within the meaning of section 504. (See Rev.Rul. 54–420, C.B. 1954–2, 128).

"A review of the foregoing shows that notwithstanding that substan-

tial gifts of cash and securities have been received by you from your creators, you borrowed sums in excess of three and one half million dollars, with no evidenced purpose therefor other than as stated above, or, to increase your financial position and income earning capacity. During the years that you have been operating not only have you made substantial accumulations of income, but by incurring the indebtedness referred to herein you became obligated to use additional income for the repayment thereof. It is further shown that though you had income available in prior years to reduce the indebtedness incurred in those years, no payments were made thereon until the years presently under consideration.

"It is the opinion of this office that the amounts accumulated out of income during the years 1951 through 1954 are unreasonable within the intent of section 504 of the 1954 Code. The fact that during these years income was used to partially liquidate the indebtedness theretofore incurred does not change your position so far as the accumulation is concerned, in view of the position of the Service that the use of income in such manner is considered to be an accumulation. Further, the borrowing of funds merely for the purpose of increasing the earning power of an organization so that in future years it may have a larger operating fund is not a sufficient basis to justify the accumulation of income for the repayment thereof, or to establish that the accumulations were necessary to carry out the exempt purposes of the organization.

"It is our further opinion that your proposal to eliminate your indebtedness during the year 1955 by selling a part of your principal assets cannot have any retroactive effect with respect to the years during which your income is considered to have been unreasonably accumulated. Accordingly, we have concluded that you are not entitled to exemption from Federal income tax for the years 1951, 1952, 1953 and 1954 and your exempt status for such years is hereby revoked. Our ruling of December 30, 1941 is hereby modified in accordance therewith.

"You are required, therefore, to file Federal income tax returns for such years on Form 1120.

"With respect to your status for the year 1955 and subsequent years if the indebtedness to which you are presently subject is liquidated as proposed and you distribute your income for the year 1955 as indicated, consideration would be given to reinstating your exemption for such year and subsequent years. However, this is not to be considered as a definite commitment or a ruling for the year 1955 or subsequent years since only upon submission of the proper evidence to this office may a definite ruling be issued. Such evidence would include complete information as to the assets sold, to whom, the selling price, the terms of sale, financial statements, and any other agreements pertaining thereto which will evidence to the satisfaction of the Service that the circumstances causing the loss of your exemption have been eliminated.

"Your plan for supplying funds for the construction of the field house referred to above, and the reservation of income earned in future years to be used for such purpose, appears to be within the intent of the exemption statute. However, in order for us to issue a definite ruling as to whether the accumulation of income therefor is proper, it will be necessary that you advise, in addition to the information presently before us, the amount of funds you expect to supply, the amount of principal you expect to use, the approximate amount of income to be used or

set aside therefor, and the period such accumulation is expected to continue.

"The District Director of Internal Revenue at Indianapolis, Indiana, is being advised of the action taken herein.

"Very truly yours,

H. L. Swartz

Director, Tax Rulings Division"

5. By its written instrument dated January 20, 1956, the plaintiff created the "Hulman Public Building Trust" for the purpose of building and providing a civic building hereinafter referred to in these Findings in furtherance of the plaintiff's planning during and prior to the years 1951 through 1955. This instrument was amended on June 17, 1958, and again on April 16, 1960. This instrument and the two amendments are identified as Exhibit A, attached hereto and made a part hereof. This trust has been ruled tax exempt by the defendant.

The defendant restored plaintiff's exempt status for all years subsequent to the year 1954 and refunded to plaintiff taxes, penalties and interest for the years 1955 and 1956, all in accordance with defendant's letter of July 18, 1960 identified as Exhibit B, attached hereto and made a part hereof.

6. Pursuant to an audit of plaintiff and resulting determination by defendant that plaintiff owed income taxes for the years 1951 through 1954, the plaintiff on November 20, 1956, in compliance with this ruling, did execute and file with the Director of Internal Revenue for the District of Indiana, a "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax", Form 870, waiving and consenting to the assessment and collection of deficiencies in income tax for the years 1951 through 1954 in the respective amounts of $62,523.91, $11,022.78, $13,490.86 and $10,947.50, reserving, however, the right to file a claim for refund of such deficiency for said years. At the same time, plaintiff paid said District Director the amount of each such deficiency for the years 1951 through 1954, and on December 26, 1956, plaintiff to defendant paid interest on each deficiency in the respective amounts of $17,557.96, $2,434.05, $2,169.60 and $1,103.73. Said payments amounted in total to $121,250.39.

7. On November 10, 1958, within the time limitations prescribed by law in effect at the time and in compliance with Section 7422 of Title 26 of the United States Code, plaintiff filed with said District Director of Internal Revenue for the District of Indiana at Indianapolis, Indiana, properly executed on Form 843 with attachments, separate claims for the refund of taxes together with interest for the years 1951, 1952, 1953 and 1954 in the amount of $80,081.87, $13,456.83, $15,660.46 and $12,051.23, respectively. In each of said claims, plaintiff demanded repayment of said above mentioned amounts paid by it to defendant, for the reasons that plaintiff, during each of said years, was exempt from income taxes and did not unreasonably accumulate its income.

8. By notice of disallowance dated September 15, 1959, mailed to plaintiff by registered letter, the said Director of Internal Revenue for the District of Indiana disallowed plaintiff's claim for refund of Federal income taxes and interest paid for the years 1951 through 1954 in the amounts of $80,081.87, $13,456.83, $15,660.46 and $12,051.23, respectively, together with interest thereon as provided by law. Subsequent to such disallowance, and within the time allowed by law, plaintiff filed this suit for refund of said amounts paid by it to defendant, with interest thereon as provided by law.

9. Mr. Anton Hulman, Jr. was the dominant organizer of and at all times in question controlled the plaintiff. Mr. Hulman and his ancestors for many years prior to plaintiff's incorporation and since have been closely associated with the business, cultural, civic, social, and charitable activities of the community of Vigo County, Indiana. The assets of the plaintiff referred to in these Findings were all acquired directly or indirectly

from members of the Hulman family, except a donation of $15,000 to plaintiff by Princeton Mining Company referred to in Finding of Fact No. 12.

10. During World War Two, Mr. Hulman was in charge of the war bond sales promotion. In this capacity it was necessary for him to provide meeting places for members of the public to fulfill his mission in Vigo County, Indiana. Then and at all times in question there was and is no adequate indoor meeting place to fulfill the cultural, civic, social, athletic and charitable needs of the public. Mr. Hulman, prior to 1950 and continuously since, individually and as a director jointly with the other directors of plaintiff, concluded to construct a coliseum or auditorium type structure and to maintain such thereafter for the community needs. The plaintiff during the times in question through its directors progressively studied the needs of the community, surveyed the community for a location and availability of real estate for a site, made a general study of approximate costs and maintenance costs in the future years, and explored for ways and means of increasing the capital funds and income of plaintiff to construct and maintain such structure and continue its other charitable purposes. The directors differed as to the estimated costs of construction and maintenance and with the passage of time were all aware that the costs were increasing. All directors agreed that the increase of the plaintiff's funds was a first requisite to the success of the project before prematurely engaging in the expense of concluding building plans. The plaintiff during the times in question as set forth elsewhere in these Findings did materially increase the funds of the plaintiff for the project.

11. The proposed civic building was at all times in question within the purposes of the plaintiff, originated by it, and was in the process of execution toward the ultimate construction and use thereof. At all times in question the plaintiff was committed to construct and maintain a building for the use of the public. No governmental unit intends and/or is able financially to construct and manage such project.

12. During the years 1940-1954, the plaintiff was funded by contributions scheduled as follows:

| Year | Hulman & Co. | A. Hulman, Jr. | Grace Hulman | | |
|------|-------------|----------------|--------------|---|---|
| 1940 | $ 80,000.00 | $ 10,000.00 | | | |
| 1941 | 65,000.00 | 10,000.00 | | $1,163,100.00 | A. Hulman, Sr. |
| 1942 | 45,000.00 | 15,000.00 | $ 15,000.00 | | |
| 1943 | 45,000.00 | 15,000.00 | 6,000.00 | | |
| 1944 | 45,000.00 | 34,000.00 | 19,000.00 | 15,000.00 | Princeton |
| 1945 | 45,000.00 | 35,000.00 | 17,000.00 | | Mining Co. |
| 1946 | 35,000.00 | 26,798.90 | 16,000.00 | 2,500.00 | T. H. Heavy |
| 1947 | 35,000.00 | 16,500.00 | 11,000.00 | | Hardware |
| 1948 | 35,000.00 | 30,000.00 | 19,000.00 | | |
| 1949 | 35,000.00 | 34,500.00 | 16,000.00 | | |
| 1950 | 80,000.00 | 52,000.00 | 26,750.00 | | |
| 1951 | 135,191.62 | 40,000.00 | 24,000.00 | | |
| 1952 | 35,000.00 | 38,000.00 | 40,000.00 | | |
| 1953 | 35,000.00 | 34,000.00 | 27,000.00 | 13,182.73 | Indpls. Motor |
| 1954 | 35,375.49 | 77,000.00 | 40,000.00 | 17,500.00 | Speedway |
| Total | $785,567.11 | $467,798.90 | $276,750.00 | $1,211,282.73 | |

The yearly total of such contributions and the accumulated balances thereof at the end of each year are scheduled as follows:

| Year | Yearly Contributions | Accumulated Contributions |
|------|---------------------|---------------------------|
| 1940 | $ 90,000.00 | $ 90,000.00 |
| 1941 | 1,238,100.00 | 1,328,100.00 |
| 1942 | 75,000.00 | 1,403,100.00 |
| 1943 | 66,000.00 | 1,469,100.00 |
| 1944 | 113,000.00 | 1,582,100.00 |
| 1945 | 97,000.00 | 1,679,100.00 |
| 1946 | 80,298.90 | 1,759,398.90 |
| 1947 | 62,500.00 | 1,821,898.90 |
| 1948 | 84,000.00 | 1,905,898.90 |
| 1949 | 85,500.00 | 1,991,398.90 |
| 1950 | 158,750.00 | 2,150,148.90 |
| 1951 | 199,191.62 | 2,349,340.52 |
| 1952 | 113,000.00 | 2,462,340.52 |
| 1953 | 109,182.73 | 2,571,523.25 |
| 1954 | 169,875.49 | 2,741,398.74 |

The stock of the donors, Indianapolis Motor Speedway Corporation and Terre Haute Heavy Hardware Company, was either wholly owned by Hulman and Company or by Hulman and Company and the plaintiff. Minority stock of the donor, Princeton Mining Company, Inc., was owned by members of the Hulman family. The stock of the donor, Hulman and Company, was owned by members of the Hulman family and the plaintiff. At all times pertinent to this lawsuit Hulman & Company controlled Indianapolis Motor Speedway Corporation and Terre Haute Heavy Hardware Company and Anton Hulman, Jr. and members of his family controlled Hulman & Company. Anton Hulman, Sr. was the father of Anton Hulman, Jr. and Grace Hulman is the mother of Anton Hulman, Jr.

13. Plaintiff borrowed money from Hulman and Company while plaintiff was a minority stockholder of Hulman and Company. Such loans were on open account without any obligations for interest or other charge. Plaintiff's purpose in borrowing such funds and Hulman and Company's purpose in loaning such funds from time to time was for plaintiff to invest and to acquire sufficient funds from the resulting capital gains and income therefrom for plaintiff to construct and maintain such civic building. The minimum estimated cost of constructing such building during the years in question was between $1,500,-000.00 and $3,000,000.00 not including cost of maintenance thereafter. The cost was also dependent upon the success of plaintiff to acquire funds and then the extent of the facilities and type of construction would be governed by the quantity of plaintiff's funds without sacrificing its needed funds for regular yearly charitable donations and such new charitable undertakings that might arise. The following schedule recites these loan transactions between plaintiff and Hulman Company:

| Years (Ending Dec. 31) | Plaintiff Borrowed (Hulman & Co. Loaned) | Plaintiff Paid To Hulman & Co. | Plaintiff Owed Hulman & Co. Year End |
|------------------------|------------------------------------------|-------------------------------|--------------------------------------|
| 1945 | $ 140,000.00 | | $ 140,000.00 |
| 1946 | 210,000.00 | $ 140,000.00 | 210,000.00 |
| 1947 | 442,000.00 | 190,000.00 | 462,000.00 |
| 1948 | 289,300.00 | 35,000.00 | 716,300.00 |
| 1949 | 1,312,151.18 | 115,000.00 | 1,913,451.18 |
| 1950 | 1,885,522.65 | 447,650.00 | 3,351,323.83 |
| 1951 | 18,700.00 | 1,322,398.75 | 2,047,625.08 |
| 1952 | 1,000.00 | 256,700.00 | 1,791,925.08 |
| 1953 | 108,500.00 | 337,629.00 | 1,562,795.28 |
| 1954 | 368,200.00 | 122,682.42 | 1,808,312.86 |
| Total | $4,775,373.83 | $2,967,060.97 | |

432

The balance of the debt of $1,808,312.-86 for the year ending December 31, 1954 was paid by plaintiff to Hulman and Company during the year 1955. The scheduled payments made during the years 1951–1954 by plaintiff to Hulman and Company was accomplished by the use of funds derived from the disposition of preferred stocks previously acquired by plaintiff by use of such borrowed money; by the use of funds derived from income on investments; by the use of funds derived from capital gains; and by the use of funds derived from contributions.

During the years 1950–1954, Hulman and Company expanded its business. In 1950, it purchased property in the State of Rhode Island for $2,095,713.95; property in the State of Arkansas for $462,-447.14; and stock and debentures of F. W. Cook Company, Inc. of Evansville, Indiana, for $1,116,000.00. All of such purchase totaling $3,674,161.09 were paid for by Hulman and Company in the year 1950. In the years 1951–1954, Hulman and Company advanced moneys to F. W. Cook Company, Inc. (it being a majority stockholder) in the sum of $3,-036,832.27. During the years 1951–1954, Hulman and Company paid dividends to its stockholders in excess of $900,000.00. Hulman and Company was indebted by reason of loans and the balance of its borrowings as of December 31, 1950 through 1954 were as follows:

| Year | Banks | Related Companies | Stockholders | Total |
|------|-------|-------------------|--------------|-------|
| 1950 | $3,190,000.00 | $420,000.00 | $ 36,000.00 | $3,646,000.00 |
| 1951 | 1,950,000.00 | 211,000.00 | 493,240.35 | 2,654,240.35 |
| 1952 | 1,200,000.00 | 342,000.00 | 605,747.55 | 2,147,747.55 |
| 1953 | 1,400,000.00 | 394,000.00 | 476,332.97 | 2,270,332.97 |
| 1954 | 1,300,000.00 | 99,000.00 | 1,107,076.04 | 2,506,076.04 |

No interest was paid to the related companies and the stockholders but interest was paid to the banks on such loans. During the period 1951–1954 business opportunities were offered and the soundest and best were accepted by the plaintiff. The larger of these investments were in stocks of the Indiana Gas and Chemical Corporation of Terre Haute, Indiana, the Tribune-Star Publishing Co., Inc. of Terre Haute, Indiana, and the Southern Indiana Gas and Electric Company of Evansville, Indiana. All of the Hulman and Company's said borrowings from banks, related companies and its stockholders as well as Hulman and Company loans to the plaintiff during the years 1950–1954 had economic reality, were real and not sham and none of them were entered into with any motive of tax avoidance. If no loans had been made by Hulman and Company during the years 1950–1954 to plaintiff, it is purely conjective on the part of the defendant in asserting that all or part of the borrowings Hulman and Company made from banks, related companies and stockholders would not have had to have been made in that it is further based on an assumption that Hulman and Company would not have taken the offered investments that were taken up by the plaintiff.

14. A schedule of plaintiff's earnings (interest, dividends and capital gains and losses); expenses, bad debts, charitable donations and accumulated earnings during the years 1940 through 1954 is as follows:

Finding of Fact 14 Continued

| Year | Interest Received | Dividends Received | Capital Gains (Losses) | Expenses | Bad Debts | Contributions | Accumulated Earnings |
|---|---|---|---|---|---|---|---|
| 1940 | | | | | | $ 2,745.00 | ($ 2,745.00) |
| 1941 | $ 300.00 | | | | | 11,605.50 | ( 14,050.50) |
| 1942 | 225.00 | $ 85,350.00 | | | | 7,065.00 | 64,459.50 |
| 1943 | 1,512.50 | 82,500.00 | | $ 6.00 | | 132,500.00 | 15,966.00 |
| 1944 | 2,627.50 | 88,200.00 | | 6.00 | | 23,400.00 | 83,387.50 |
| 1945 | 2,740.00 | 82,124.72 | | 19.81 | | 14,900.00 | 153,332.41 |
| 1946 | 2,605.00 | 86,930.80 | $ 5,235.95 | 6.00 | | 24,100.00 | 223,998.16 |
| 1947 | 2,815.00 | 66,721.35 | | | | 50,750.00 | 242,784.51 |
| 1948 | 6,149.94 | 80,685.50 | | 12.00 | | 14,282.55 | 315,325.40 |
| 1949 | 6,608.03 | 144,310.00 | | 6.00 | | 93,505.00 | 372,732.43 |
| 1950 | 31,375.02 | 289,595.25 | | 28.65 | | 102,400.00 | 591,274.05 |
| 1951 | 21,585.09 | 264,434.45 | 188,369.78 | 6.00 | | 20,000.00 | 1,045,657.37 |
| 1952 | 18,413.53 | 156,919.98 | | 1,484.50 | | 30,400.00 | 1,189,106.38 |
| 1953 | 22,689.88 | 167,018.19 | ( 1,120.29) | 1,827.70 | | 19,400.00 | 1,356,466.46 |
| 1954 | 10,258.60 | 236,432.77 | 5,080.82 | 1,186.80 | $13,605.04 | 41,389.33 | 1,552,057.48 |
| Total | $129,905.09 | $1,831,223.01 | $197,566.26 | $4,589.46 | $13,605.04 | $588,442.38 | |

The gross earnings and capital appreciation set forth in the above schedule resulted from the investment of funds donated to plaintiff, from investments donated to plaintiff, and investment of funds loaned to plaintiff. A schedule of the stock acquisitions and dispositions. yielding such is identified as Exhibit C, attached hereto and made a part hereof. A schedule of accounts and notes receiv--

able yielding such is identified as Exhibit D, attached hereto and made a part hereof. The plaintiff's gross income during the years 1951–1954 excluding contribution to it and giving effect to capital gains and losses as adjusted by defendant was $1,090,070.30. During this period of time, plaintiff reduced its debt to Hulman and Company by $1,543,010.97. The accumulated earnings of the plaintiff were being accumulated and used for the charitable purposes for which it was organized and exempted from the Internal Revenue Laws.

The expenses of $4,589.46 for the years 1940–1954 set forth in the schedule is made up of an annual charge for the rental by plaintiff of a safety deposit box, securities tax, cost of shipping securities, fees for escrow agents, and interest on purchase contract.

The contributions of $588,442.38 for the years 1940–1954 set forth in the schedule were made for charitable causes. The largest of such contributions to a single cause was made to the City of Terre Haute, Indiana, in the amount of $255,539.33 to acquire land for an airport and to construct buildings thereon. The next largest of such contributions to a single cause was made to St. Anthony Hospital of Terre Haute, Indiana, in the amount of $60,475.00 which institution was established many years ago through the efforts and donations of the grandparents of Anton Hulman, Jr. The next largest of such contributions to a single cause was made to the State of Indiana in the amount of $52,505.00 to assist in the acquiring of public parks and recreational areas in western Indiana. The next largest of such contributions to a single cause was made to the Rose Polytechnic Institute, an engineering college situated in Vigo County, Indiana, in the amount of $40,000.00. A schedule of all contributions as is follows:

| DONEE | AMOUNT |
| --- | --- |
| St. Anthony Hospital, Terre Haute | $ 60,475.00 |
| Roosevelt Hospital, New York City | 10,000.00 |
| Union Hospital, Terre Haute | 3,305.50 |
| St. Mary's Hospital, Evansville | 10,000.00 |
| St. Margaret & Mary's Church, Terre Haute | 5,500.00 |
| Centenary Methodist Church, Terre Haute | 2,425.00 |
| St. Benedict's Church, Terre Haute | 2,500.00 |
| St. Anne's Church, Terre Haute | 1,000.00 |
| Wabash Valley Fair Ass'n., Terre Haute | 1,000.00 |
| Day Nursery, Terre Haute | 3,250.00 |
| American Red Cross, Terre Haute | 26,190.00 |
| Community Funds | 70,900.00 |
| Vigo County Tuberculosis Soc., Terre Haute | 4,600.00 |
| Terre Haute Boy's Club | 2,000.00 |
| Y. M. C. A., Terre Haute | 3,000.00 |
| Dobb's Memorial Forest, Terre Haute | 1,000.00 |
| Indiana State College, Terre Haute | 1,000.00 |
| Rose Poly Tech. Institute, Terre Haute | 40,000.00 |
| Riley Centennial Research Fund, Indianapolis | 1,000.00 |
| United Jewish Relief, Terre Haute | 1,500.00 |
| Florence Crittenton Home, Terre Haute | 1,500.00 |
| Boy Scouts of America, Terre Haute | 2,000.00 |
| Devereux Foundation, Devon, Pa. | 5,000.00 |
| City of Terre Haute | 255,539.33 |
| State of Indiana | 52,505.00 |
| Veteran's Assistance Center, Terre Haute | 1,400.00 |

| DONEE | AMOUNT |
|---|---|
| Internat'l. Dairy Exposition, Indianapolis | 1,000.00 |
| Otter Creek Young Men's Club, N. Terre Haute | 1,000.00 |
| American Legion, Terre Haute | 900.00 |
| Speedway High School, Speedway, Ind. | 3,000.00 |
| Purdue University, Lafayette, Ind. | 1,000.00 |
| Cancer Society, Terre Haute | 1,600.00 |
| American Museum of Natural History, New York City | 10,000.00 |
| Misc., not in excess of 200.00 | 1,352.55 |
| | $588,442.38 |

The contributions to charitable causes ranged from an annual low of $2,745.00 to an annual high of $132,500.00. During the fourteen years of plaintiff's existence between the inclusive years of 1940–1954, the contributions of plaintiff averaged $42,031.59 per year. Plaintiff did not confine itself to donations to existing charities; it continued to make donations to charitable causes and institutions originated prior to the plaintiff's incorporation by the donors to plaintiff or their ancestors; in certain of its larger donations it can be said that plaintiff could be classed as a co-sponsor; and it originated the civic building cause for which the uncompensated executives of plaintiff have devoted many hours of effort and used the ingenuity and influence of these men of proven ability to the intended committed purpose as explained in these findings for the accumulation of funds for a massive outlay of plaintiff's funds to construction of the civic building and yearly maintenance thereafter.

The accumulated earnings set forth in the schedule were never sufficient for the plaintiff to commence and/or complete the project of the civic building and maintain it thereafter.

15. In addition to the itemized assets of accounts and notes receivable and corporate stocks of the plaintiff set forth in one of the schedules in Finding of Fact Number Fourteen, the plaintiff during the years 1940–1954 was also possessed of assets consisting of cash, United States Savings Bonds, and real estate and improvements as follows:

| Year | Cash | U. S. Savings Bonds | Real Estate and Imp. |
|---|---|---|---|
| 1940 | $ 87,255.50 | | |
| 1941 | 86,449.50 | | |
| 1942 | 226,959.50 | | |
| 1943 | 149,610.52 | $100,000.00 | |
| 1944 | 311,761.02 | 100,000.00 | |
| 1945 | 213,734.93 | 100,000.00 | |
| 1946 | 139,507.88 | 100,000.00 | |
| 1947 | 14,436.01 | 100,000.00 | |
| 1948 | 128,248.35 | 100,000.00 | $16,945.15 |
| 1949 | 234,499.08 | 100,000.00 | 17,880.93 |
| 1950 | 75,715.39 | 100,000.00 | 20,750.63 |
| 1951 | 93,870.34 | 100,000.00 | 20,259.41 |
| 1952 | 52,165.80 | 100,000.00 | 19,320.46 |
| 1953 | 42,327.36 | 100,000.00 | 31,498.75 |
| 1954 | 90,844.64 | 100,000.00 | |

16. The net worth of the plaintiff (its total assets less its total liabilities) for each of the years 1940–1954 exclusive of any Federal income taxes was:

| Year | Total Assets | Total Liabilities | Net Worth |
|------|-------------|-------------------|-----------|
| 1940 | $   87,255.00 | | $   87,255.00 |
| 1941 | 1,314,049.50 | | 1,314,049.50 |
| 1942 | 1,467,559.50 | | 1,467,559.50 |
| 1943 | 1,485,066.00 | | 1,485,066.00 |
| 1944 | 1,665,487.50 | | 1,665,487.50 |
| 1945 | 1,972,432.41 | $   140,000.00 | 1,832,432.41 |
| 1946 | 2,193,397.06 | 210,000.00 | 1,983,397.06 |
| 1947 | 2,526,683.41 | 462,000.00 | 2,064,683.41 |
| 1948 | 2,937,524.30 | 716,300.00 | 2,221,224.30 |
| 1949 | 4,292,582.51 | 1,928,451.18 | 2,364,131.33 |
| 1950 | 6,092,746.78 | 3,351,323.83 | 2,741,422.95 |
| 1951 | 5,442,622.97 | 2,047,625.08 | 3,394,997.89 |
| 1952 | 5,443,424.16 | 1,790,925.08 | 3,652,499.08 |
| 1953 | 5,490,837.17 | 1,561,795.28 | 3,929,041.89 |
| 1954 | 6,102,763.79 | 1,809,307.57 | 4,293,456.22 |

The use of $1,500,000 to $3,000,000 to construct such civic building during any one of the years 1951–1954 would have reduced its net worth to such an extent that beneficiaries of plaintiff's contributions since 1940–1954 would have received nothing and plaintiff would have been relegated to supporting the civic building only and even then of uncertain stability to maintain such project thereafter. The net worth of plaintiff during the years 1951–1954 was insufficient to support its purposes including the civic building.

17. The plaintiff's dealings during the years 1951–1954 with certain of its stocks and loans set forth in Finding of Fact Number Fourteen, pages 432 thru 435, disclose the following:

A. Richmond Gas Corporation, of Richmond, Indiana. The stock of this corporation was distributed between Anton Hulman, Jr., approximately 3800 shares, the plaintiff, 2850 shares, and other owners 3350 shares. Thus between the plaintiff and Mr. Hulman, or plaintiff and other owners, or Mr. Hulman and other owners, majority control of the corporation was assured in one of these three combinations. No loans were made by plaintiff to this corporation during the years 1951–1954.

B. The Wabash Valley Broadcasting Corporation. The Hulman family and other parties connected with plaintiff owned all but 50 shares of the stock of this corporation. By reason of a loan made in 1947 and 1948 to this corporation by plaintiff there existed an unpaid balance of $202,725.00 in the year 1951, $197,725.00 in the year 1952, $177,725.00 in the year 1953, and $177,725.00 in the year 1954. In the year 1954, the plaintiff loaned an additional $232,500.00 to this corporation. During this period, the plaintiff agreed to subordinate its loan to this corporation to another loan of the Indiana National Bank to this corporation. During the years 1951–1954, plaintiff did not own stock in this corporation.

C. T & H Corporation. During the years involved in this lawsuit plaintiff had $10,000 invested in T & H Corporation stock, which represented one half of the stock of said corporation. By reason of a loan made in 1949 by this corporation to plaintiff there existed an unpaid balance of $80,000 in each of the years 1951 and 1952, $50,000 in each of the years 1953 and 1954. During the

years 1951–1954, Anton Hulman, Jr., owned no stock in said corporation.

D. R. and J. Oil and Refining Co., Inc. 21.42% of the stock of this corporation was owned by the Hulman family. Plaintiff made loans to this corporation which had a balance of $100,000.00 in the year ending 1953 and of $225,000.00 in the year ending 1954. During the years 1951–1954, plaintiff did not own stock in this corporation.

E. Mechanical Suppliers, Inc. This corporation is a commercial enterprise. It was created by plaintiff and carries on a plumbing supply business. This corporation's stock is wholly owned by plaintiff and is its subsidiary.

F. Meadows Center, Inc. This corporation is a commercial enterprise. It was created by plaintiff and carries on the operation of a developed tract of real estate. This corporation's stock is wholly owned by plaintiff and is its subsidiary. When this corporation was formed, the plaintiff paid some of this corporation's expenses and plaintiff then charged this corporation and increased the amount of an outstanding loan from plaintiff to this corporation.

G. Gagel Realty Corporation. The plaintiff owns substantial or controlling interests in this corporation.

H. Hulman Realty Corporation. The plaintiff owns substantial or controlling interests in this corporation.

I. The Tribune Star Publishing Company. The plaintiff owns substantially all of this corporation's stock. This corporation is engaged in publishing the morning and evening newspapers of Terre Haute, Indiana, known as the Terre Haute Star and the Terre Haute Tribune.

18. The emphasis of plaintiff's conduct of its business was directed toward its immediate ultimate purpose of building and maintaining the civic building. It was necessary to better its financial position. The Hulman family at no time were in need of the plaintiff's funds and their sole intention was to aid the plaintiff for the accomplishment of its purpose. The borrowings of money from the Hulman family and their interests without any charge to plaintiff and the sound program of the investment thereof supports such intention and contrary to any expectancy of the Hulman family to create and use a tax free reservoir. During the year 1954 when the plaintiff made an interest paying loan of $232,500.00 to the Wabash Valley Broadcasting Corporation which was controlled by the Hulman family the Hulman and Company also controlled by the Hulman family during this year loaned to plaintiff without charge the sum of $245,517.58. The Hulman family might well have used this to loan to the Wabash Valley Broadcasting Corporation but chose to benefit the plaintiff with the donation of the income from such investment. The plaintiff's subordination of this loan was dominantly in the interest of plaintiff's charitable activities and only incidental to other purposes that are not tax free. The conduct of plaintiff's business as recited in these Findings of Fact was incidental to plaintiff's charitable activities. The conduct of plaintiff's charitable activities was predominant to plaintiff's business activities. The Hulman family's fortune was the plaintiff's reservoir for future donations as well as executive guidance as evidenced by the past performance. The Hulman family and their interests did not use the plaintiff as a tax free reservoir of capital. The plaintiff did not permit and was not used by anyone as a tax free reservoir of capital. The ages of the Hulman family are also indicative of the pure charitable intentions of their donations and executive management given to the plaintiff from which many charities and charitable causes have in the past and will in the future benefit the general community of Terre Haute, Indiana. Finding of Fact Number Thirteen discloses the yearly borrowings without charge from the Hulman family interests and the yearly balances owing from plaintiff to the Hulman family interests. Such schedule discloses that if the Hulman family had any other motive or intention than as found by this Court debt could have been called for payment

from plaintiff at any time from year to year, cause those business interests allied to the Hulman family to pay off their loans to plaintiff or not to make any further borrowings from plaintiff, required plaintiff to sell its stock in all or any of the investments including those set forth in Finding of Fact Number Seventeen. Never at any time has the limited loans of plaintiff to corporations or stock ownership in other corporations, in which the Hulman family were interested, except for the plaintiff's stock in Hulman and Company exceeded or come in the near proximity to the loan balances due from plaintiff to the Hulman family and their interests. The objective of the plaintiff and as supported by the Hulman family and their interests is clear from all of their transactions and that was to beef up the plaintiff financially to construct the civic building, maintain it and support charities generally in accordance with the plaintiff's purposes for which it was exempted under the Internal Revenue Laws.

19. The plaintiff denied that its activities included in any way the carrying on of propaganda or otherwise attempting to influence legislation, or that it has ever participated in or intervened in any political campaign on behalf of any candidate for public office. This is not refuted by defendant and there is no evidence from which the Court could even remotely infer that there were such activities.

20. The plaintiff's earnings have in no way inured to the benefit of any private shareholder or individual.

21. During the taxable years 1951 through 1954, the plaintiff did not accumulate its income unreasonably, either in amount or duration in order to carry out the purposes constituting the basis for its exemption from income taxes, that it did not use its accumulated income to a substantial degree for purposes other than those constituting the basis for its said exemption, and it did not invest its accumulated income in such a manner as to jeopardize the carrying out of its exempt purposes.

22. Plaintiff's objective to build a civic building was and is a reasonable one in view of all of the found facts.

23. Plaintiff made no other payments or disbursements except as set forth in these Findings.

24. Plaintiff duly filed with defendant, for each of the tax years 1951–1954, the returns provided for in the Internal Revenue Laws, and which returns showed, among other facts, the plaintiff's gross income and the total debt of plaintiff at the end of each year.

25. This action arises under Section 7422 of Title 26 of the United States Code pertaining to suits for refund of Internal Revenue taxes allegedly erroneously and illegally collected. Jurisdiction of this Court over subject matter of plaintiff's complaint is founded under the provisions of Section 1346(a) (1) of Title 28 of the United States Code.

26. The plaintiff was qualified for exemption from income taxes under the Internal Revenue Laws in force in each of the years 1951, 1952, 1953, and 1954, and defendant has denied plaintiff's claim of exemption.

27. The defendant wrongfully and illegally collected the taxes and interest from plaintiff referred to in these Findings.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter of the action.

2. The plaintiff has proved by a preponderance of the evidence all of the essential elements and facts of the complaint and supplemental complaints.

3. The plaintiff was an organization described in Section 101(6) of the Internal Revenue Code of 1939 to which Section 3813 of such Code was applicable, and plaintiff was an organization described in Section 501(c) (3) of the Internal Revenue Code of 1954 to which Section 503 of such Code was applicable.

4. The plaintiff's accumulations out of income during each of the tax years in question or any prior tax year

and not actually paid out by the end of the tax year were not unreasonable in amount or duration in order to carry out its exempt purposes.

■ 5. The plaintiff's accumulations out of income during each of the tax years in question or any prior taxable year and not actually paid out by the end of the tax year were not used to a substantial degree for purposes or functions other than its exempt purposes.

■ 6. The plaintiff's accumulations out of income during each of the tax years in question or any prior taxable year and not actually paid out by the end of the tax year were not invested in such a manner as to jeopardize the carrying out of its exempt purposes.

7. The plaintiff was exempt from income tax under the provisions of Section 101 of the Internal Revenue Code of 1939 for the years 1951, 1952, and 1953, and under Section 501 of the Internal Revenue Code of 1954 for the year 1954.

8. The defendant illegally and erroneously assessed and collected from plaintiff income taxes and interest for each of the years in question.

9. Any Finding of Fact which is deemed to be a Conclusion of Law is made a Conclusion of Law, and any Conclusion of Law which is deemed to be a Finding of Fact is made a Finding of Fact.

10. The plaintiff is entitled to recover Judgment from the defendant in the sum of $97,985.05 together with interest thereon at the rate of 6% per annum from November 20, 1956 to the date of Judgment on these Findings. The plaintiff is also entitled to recover from the defendant the sum of $23,265.34 together with interest thereon at the rate of 6% per annum from December 26, 1956 to the date of Judgment on these Findings. The Judgment shall bear interest at the rate of 6% per annum from the date of Judgment until refunded by defendant as provided by law. The Judgment shall provide for costs of this action assessed in the sum of $——————— against defendant.

The Clerk is directed to forthwith enter Judgment in accordance with the Federal Rules of Civil Procedure.

### Finding of Fact Exhibit A

### INDENTURE OF TRUST

HULMAN FOUNDATION, INC., an Indiana not-for-profit corporation, hereinafter sometimes called "Donor", for the purpose of constructing and/or otherwise acquiring properties for the benefit of Vigo County, Indiana, its inhabitants and the inhabitants of the surrounding area, and the ultimate establishment of a fund for maintenance of said properties, does hereby give, convey and set over absolutely and forever to THOMAS J. DOHERTY, of Terre Haute, Indiana, and LEONARD B. MARSHALL, of Terre Haute, Indiana, and ANTON HULMAN, JR., of Terre Haute, Indiana, and the additional Trustees, if any, who may be appointed as hereinafter provided, as Trustees, and their successors in trust, IN TRUST NEVERTHELESS for such purposes as are more fully set forth hereinafter, the property described in Schedule A, attached hereto and made a part hereof, receipt of which is hereby acknowledged by said named Trustees.

### A. NAME OF TRUST

This Trust shall be known as the "HULMAN PUBLIC BUILDING TRUST".

### B. PURPOSE OF TRUST

The primary purpose of this Trust in perpetuity is to provide for the building and/or maintaining of properties (including, but not limited to, a civic auditorium, field house, athletic field and/or coliseum) in Vigo County, Indiana, for the benefit of Vigo County, Indiana, and for its inhabitants and the inhabitants of the surrounding area. The Donor of this Trust wishes to provide a place of meeting and assembling available to the residents of said Vigo County and the surrounding area for civic, social and/or educational purposes, and for their pleasure, enjoyment, and entertainment. If it should ever become impossible or im-

practicable to carry out that purpose as herein set forth, the Trustees are authorized and directed to administer and/or dispose of the assets of this Trust for the benefit of the inhabitants of the said Vigo County and the surrounding area in such manner and for such specific purposes and under such restrictions, terms and conditions as they, in their discretion, deem advisable.

## C. TRUSTEES AND SUCCESSOR TRUSTEES

The term for which the Trustees are authorized to act as such after their appointment shall be for life. The Trustees shall constitute a self-perpetuating body. In the event any vacancy shall occur because of death, resignation, incapacity to act, or removal of a Trustee, the then remaining Trustees or Trustee at the time shall, within a reasonable time fill said vacancy or vacancies; *provided, however,* that a Trustee may be removed by not less than a majority vote of all of the Trustees when they deem that said Trustee is incompatible, or not in sympathy with the purposes of the Trust.

At any time hereafter, by written instrument executed by the then Trustees and Donor, two additional Trustees may be appointed so that the total number of Trustees then shall be five. Such additional Trustees shall be residents of Vigo County, Indiana, and shall have demonstrated, in the opinion of the parties to such agreement, an interest in the civic and social betterment of the community. Such additional Trustees so appointed shall have the same powers, rights and responsibilities as the original Trustees. After the number of Trustees is increased to five, that number shall be maintained.

In the event there shall be a total failure of Trustees or if the Trustees at the time are unable to agree upon a successor Trustee, or for any reason it becomes impossible to appoint successor Trustees as herein provided, then such successor Trustee shall be appointed by the Judge at the time of the Vigo Circuit Court, now being the 43rd Judicial Circuit of the State of Indiana.

Except as specifically provided herein, no person other than the original Trustees, or their successors as may be elected or appointed as provided herein, or as may be provided in any trust instrument amendatory hereto, may become a Trustee of said Trust.

## D. POWERS OF TRUSTEES

The Trustees shall have full power and authority at all times to manage and control the property of this Trust and to do all things necessary or convenient to consummate the purpose of this Trust and to care for and control its assets. Without in any way limiting the generality of the foregoing, the Trustees shall have the following powers:

(a) To provide for the erection of a community building, to choose a location therefor, to contract for its building, and to choose materials and design, and to determine the amounts that will be invested in its construction, and to do all things necessary to provide for the building and maintaining of such community building;

(b) To rent the community building to such persons or groups of persons and upon such terms and conditions as the Trustees shall deem advisable;

(c) To improve, repair, and maintain the building after its erection; to set aside portions of the principal or income of this Trust for repairs or replacement, and to set aside portions of the principal and income of this Trust for the retirement of bonds or a mortgage on Trust property or for any other legitimate purpose;

(d) To accept property from other donors or further gifts from this same Donor to be held in trust for the purposes mentioned herein and under the terms of this indenture or upon conditions not inconsistent with the terms of this Trust;

(e) To borrow money for any of the purposes of this Trust, and the Trustees may pledge, mortgage, or assign property of this Trust as security;

(f) To receive and accept in kind and to hold as an investment, as long as they shall deem it advisable, any and all property which may come to them as Trustees hereunder;

(g) To take by purchase, or otherwise, and to hold any real estate which may be necessary or proper for the execution of the Trust; to sell the same at public or private sale; to accept money or money's worth therefor; to bid for and become the purchaser thereof at any public sale and to again sell the same without any liability for any resulting loss; to make partition of real estate forming part of the Trust property, either through legal proceedings or otherwise, even though the Trustees, or any of them, may hold an interest in the same real estate in some other capacity;

(h) To lease any real estate at any time constituting any portion of the Trust property for such term or terms and rentals, and with such conditions and provisions as they shall deem proper;

(i) To exchange any real estate at any time constituting any portion of the Trust property at such prices and upon such terms and conditions and for such real or personal property as they shall deem advisable;

(j) To mortgage any real estate at any time constituting any portion of the Trust property on such terms and conditions as may seem to them proper for the payment of taxes and assessments or for the replacement of other liens or for the repair, construction or alteration of buildings thereon and for necessary expenses incident thereto;

(k) To make ordinary and extraordinary repairs and alterations to real estate, to raze old buildings, to erect new buildings, to insure against loss by fire and other casualties and generally to manage real estate as a prudent owner would do;

(l) To invest and reinvest funds in securities and properties suitable for Trust investments;

(m) To change and vary from time to time any investment of personal property, and for this or any other purpose of the Trust to sell any such investment at public or private sale or broker's board with the same right to purchase at public sale and to resell without liability for loss as in the case of real estate;

(n) To consent to or participate in any plan for the reorganization, consolidation, or merger of any corporation of which any securities are held by them, to consent to any contract of lease, mortgage, purchase or sale of property by or between such corporation and any other corporation or person, to exercise any right they may have as the holders of corporate securities, to convert the same into other securities or to acquire additional securities, to make any payments, exchange any securities or do any other act with reference thereto they may deem necessary or proper, and the securities thus held or acquired shall be deemed a proper investment for the Trustees to hold hereunder;

(o) To execute and deliver any proxies, powers of attorney, contracts, deeds, and other instruments necessary or proper in the administration of the Trust property;

(p) To determine whether money or other property coming into their possession is principal or income, or partly one and partly the other, and to charge and apportion expenses and losses to principal and income as they may deem just and equitable; and to make good any wasting investments so called, losses of principal or premiums paid for securities out of the income over such periods of time as they may deem advisable;

(q) To take and retain from the Trust funds received by them a reasonable compensation for their services as Trustees;

(r) To protect the Trust and all property of the Trust and the Trustees' interest therein from attack of any kind and to uphold the validity of all gifts hereunder, testamentary or otherwise;

(s) To cause the organization of such corporations or other agencies as may be necessary or proper to carry out the purposes of the Trust;

(t) To exercise the powers herein conferred, either discretionary or otherwise, through representatives appointed by them, and to pay their reasonable compensation and expenses;

(u) To advise with counsel, and the opinion of counsel in writing signed by him shall be a full protection and justification to the Trustees for anything suffered or done by them in good faith and in accordance with such opinion;

(v) To. transfer or convey its properties, or any or all of the assets of this Trust to any one or more of the following:

(i) any association or corporation existing or hereafter organized; or

(ii) the City of Terre Haute, Indiana, or any agency or department thereof; or

(iii) the County of Vigo, Indiana, or any agency, board or department thereof; or

(iv) the Board of School Trustees of the City of Terre Haute, Indiana; or

(v) to any board, agency, commission department or other body, existing at the time of such transfer or conveyance under the laws of the State of Indiana,

under such restrictions and conditions as will insure the use of the same for the purposes of this Trust, if at any time, in the judgment of the Trustees, it shall seem wise and prudent so to do.

In no event shall the Trustees be held liable for any neglect or wrongdoing of any agent or agents, provided reasonable care shall have been exercised in their selection, nor shall they be held liable for any loss or damage except that occasioned by their own gross neglect or wilful default.

## E. MISCELLANEOUS PROVISIONS

The Trustees shall act by majority vote of all Trustees, and a majority vote of those attending a meeting of Trustees shall not be controlling unless that majority is also a majority of all the qualifying and acting Trustees.

The Trustees shall adopt rules and by-laws for conducting their meetings, which may be amended from time to time; they shall provide for regular meetings and they shall keep a record of the minutes of meetings, which record shall be available to any Trustee; but the Trustees shall not be required to file reports or account to any Court for the conduct of their Trusts.

The Trustees, or their successors, shall not be required to give any bond or surety for the faithful performance of this Trust.

Where the word "Trustees" is used, it shall be construed to include additional and successor Trustees as well as initial Trustees.

This Trust is a perpetual Trust and, for that reason, it is intended that the construction and interpretation of the powers of Trustees, and of the purposes of the Trust, and of the other terms of this Indenture, shall be given a broad interpretation, in order that future Trustees may be able to adapt the benefits of this Trust to the best interests of the inhabitants of Vigo County and the communities contiguous thereto.

The right is expressly reserved to alter, amend, enlarge and restrict the gift hereby made and any of the terms and conditions thereby by an amended trust instrument, but not to change the original purposes of this Trust in its entirety, nor to revoke this Trust, this Trust being irrevocable. In no circumstance shall any part of the trust property or income revert to Donor.

Each and every provision of this Indenture is to be regarded and construed as so far independent of every other provision that if it shall be determined that any provision is invalid, such determination shall not affect the validity of any of the remaining provisions, and the Trust shall be administered to carry out as far as possible the purposes of the settlor in accordance with the remaining valid provisions.

IN WITNESS WHEREOF, this instrument is executed as of the 20th day of January, 1956.

HULMAN FOUNDATION, INC.

By _____
                    President

ATTEST:
   (s) J. R. Cloutier
   _____
   Secretary

STATE OF INDIANA ⎤ SS:
COUNTY OF VIGO    ⎦

Personally appeared before me the within named Anton Hulman, Jr. and J. R. Cloutier, President and Secretary, respectively, of Hulman Foundation, Inc., and acknowledged the execution of the foregoing instrument to be the voluntary act and deed of said corporation for the uses and purposes therein set forth.

WITNESS my hand and official seal.

   (s) Emma H. Wilson
   _____
   Notary Public

My commission expires:
Oct. 1, 1959.

### ACCEPTANCE OF TRUST

The undersigned hereby accept the Trust, as set forth in the foregoing instrument.

   (s) Thomas J. Doherty
   _____
   Thomas J. Doherty

   (s) Leonard B. Marshall
   _____
   Leonard B. Marshall

   (s) Anton Hulman, Jr.
   _____
   Anton Hulman, Jr.
           Trustees

STATE OF INDIANA ⎤ SS:
COUNTY OF VIGO    ⎦

Personally appeared before me the within named Thomas J. Doherty, Leonard B. Marshall and Anton Hulman, Jr., Trustees in the foregoing instrument, and acknowledged the execution of the foregoing.

WITNESS my hand and official seal.

   (s) Emma H. Wilson
   _____
   Notary Public

My commission expires:
Oct. 1, 1959.

### SCHEDULE A.

2,800 Shares of the Common Stock of Merritt-Chapman & Scott Corporation

### FIRST AMENDMENT TO TRUST AGREEMENT DATED JANUARY 20, 1956

AGREEMENT by and between HULMAN FOUNDATION INC., an Indiana not-for-profit corporation, and THOMAS J. DOHERTY, LEONARD B. MARSHALL and ANTON HULMAN, JR., all of Terre Haute, Vigo County, Indiana, being all of the Trustees Under a Certain Indenture of Trust dated January 20, 1956, WITNESSES:

WHEREAS, pursuant to paragraph "E. Miscellaneous Provisions" of said Indenture of Trust dated January 20, 1956, the right was reserved to alter, amend, enlarge or restrict the gift therein made and any of the terms and conditions of said trust; and,

WHEREAS, the said Hulman Foundation Inc. deems it advisable to amend said original trust agreement as herein provided, and said Trustees agree to such amendment.

IT IS NOW, THEREFORE, by the parties hereto, AGREED:

1. That the paragraph denominated "B. Purpose of Trust" of the aforementioned Indenture of Trust dated January 20, 1956 be, and the same hereby is, amended to read as follows:

### "B. PURPOSE OF TRUST

The primary purpose of this Trust in perpetuity is to provide for the building and/or maintaining of properties (including, but not limited to, a civic auditorium, field house, athletic field and/or

coliseum) in Vigo County, Indiana, for the benefit of Vigo County, Indiana, and for its inhabitants and the inhabitants of the surrounding area. The Donor of this Trust wishes to provide a place of meeting and assembling available to the residents of said Vigo County and the surrounding area for civic, social and/or educational purposes, and for their pleasure, enjoyment, and entertainment. If it should ever become impossible or impracticable to carry out that purpose as herein set forth, the Trustees are authorized and directed to administer and/or dispose of the assets of this Trust for the benefit of the inhabitants of the said Vigo County and the surrounding area in such manner and for such specific purposes and under such restrictions, terms and conditions as they, in their discretion, deem advisable; *provided, however,* that in the event the Trustees so continue to administer the assets of the Trust, the purposes of such administration shall be exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, that no part of the net earnings shall inure to the benefit of any private shareholder or individual, no substantial part of the activities of the Trust shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the Trust shall not participate in, or intervene in (including the publishing or distributing of statements) any political campaign on behalf of any candidate for public office.

Upon dissolution or termination of the Trust, the assets of the Trust shall be disposed of by transferring, assigning and setting over the same, as may be determined by the Trustees, at the time, to either:

(a) a corporation or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office; or,

(b) a municipal corporation or other governmental unit of the State of Indiana (that is, a political subdivision of the State of Indiana)."

2. Except as herein specifically provided in this instrument, the said Indenture of Trust dated January 20, 1956 shall be and remain in full force and effect, according to the terms thereof.

IN WITNESS WHEREOF we have hereunto set our hands and seals this 17th day of June, 1958.

HULMAN FOUNDATION, INC.

(s) Anton Hulman, Jr.
By —————————————
President

ATTEST:

(s) J. R. Cloutier
Secretary

(s) Thomas J. Doherty
Thomas J. Doherty

(s) Leonard B. Marshall
Leonard B. Marshall

(s) Anton Hulman, Jr.
Anton Hulman, Jr.

TRUSTEES UNDER INDENTURE OF TRUST DATED JANUARY 20, 1956

STATE OF INDIANA }
COUNTY OF VIGO    } SS:

Personally appeared before me, this 17th day of June, 1958, the within named Anton Hulman, Jr. and J. R. Cloutier, President and Secretary, respectively, of Hulman Foundation, Inc., and acknowl-

edged the execution of the foregoing instrument to be the voluntary act and deed of said corporation for the uses and purposes therein set forth.

WITNESS my hand and official seal.

(s) Emma H. Wilson
Notary Public

My commission expires:
Oct. 1, 1959.

STATE OF INDIANA ⎱
COUNTY OF VIGO ⎰ SS:

Personally appeared before me, this 17th day of June, 1958, the within named Thomas J. Doherty, Leonard B. Marshall and Anton Hulman, Jr., Trustees Under Indenture of Trust dated January 20, 1956, and acknowledged the execution of the foregoing instrument to be the voluntary act and deed of said Trust for the uses and purposes therein set forth.

WITNESS my hand and official seal.

(s) Emma H. Wilson
Notary Public

My commission expires:
Oct. 1, 1959.

### SECOND AMENDMENT OF INDENTURE OF TRUST

THIS INSTRUMENT, made by and between HULMAN FOUNDATION, INC., an Indiana not-for-profit corporation and THOMAS J. DOHERTY, LEONARD B. MARSHALL and ANTON HULMAN, JR., all of Terre Haute, Indiana, Trustees under Indenture of Trust dated January 20, 1956 with respect to a certain Trust known as the "Hulman Public Building Trust",

### WITNESSES:

WHEREAS, Hulman Foundation, Inc. established a certain Trust known as "Hulman Public Building Trust" by Instrument dated January 20, 1956 under the terms of which the aforementioned Thomas J. Doherty, Leonard B. Marshall and Anton Hulman, Jr. were designated as the Trustees; and,

WHEREAS, The said Trust Instrument dated January 20, 1956 provides that the same may be amended; and,

WHEREAS, It has been determined by the parties hereto that it would be desirable and in the best interest of said Trust to amend said Trust Instrument so as to more clearly set out the purpose of the Trust and the powers of the Trustees.

IT IS NOW, THEREFORE, AGREED that the said Indenture of Trust dated January 20, 1956 (as amended June 17, 1958) be, and the same hereby is, amended as hereinafter set forth, to-wit:

1. PARAGRAPH "B. PURPOSE OF TRUST", thereof, is hereby amended to read as follows:

The purposes for which this Trust is established, and for the accomplishment of which it shall be operated exclusively, are educational, charitable and scientific purposes, and the promotion and support of educational, charitable and scientific purposes, or any of them, and for no other purpose or purposes. It is the wish and aim of the Donor of this Trust, by the establishment of this Trust, to establish and maintain a place of meeting and assembling primarily for the use of educational, charitable and scientific organizations in Vigo County, Indiana. If, however, it should ever become impossible or impracticable for the Trustees to accomplish that objective, the said Trustees are hereby authorized and directed to dispose of the assets of the Trust for the benefit of the organizations, or any of them, to which the assets of the Trust could be transferred, assigned or set over as hereinafter provided in subparagraph (u) of paragraph D hereof.

2. PARAGRAPH "D. POWERS OF TRUSTEES", thereof is hereby amended to read as follows:

The Trustees shall have full and plenary powers to manage and carry

on all the affairs of the Trust, such powers, however, to be exercised only in furtherance of the purposes for which the Trust is formed. Without in any way limiting the generality of the foregoing, the Trustees shall have the following powers:

(a) To provide for the erection of a building in Vigo County, Indiana primarily for the use of educational, charitable and scientific organizations, to choose materials and design, to determine the amounts that will be invested in its construction and to do all things necessary to provide for the construction and maintenance of such building and grounds appurtenant thereto;

(b) To rent (as an insubstantial part of its activities and incidental to the primary purpose of the Trust to provide a building for the use of educational, charitable and scientific organizations) and to permit such building to such persons or groups of persons, and upon such terms and conditions, as the Trustees shall deem advisable, from time to time; *provided, however,* that under no circumstances shall any organization exempt from taxation by virtue of the provisions of Section 501(c) (3), or any agency of the State of Indiana or any political subdivision thereof or of the United States using the building for public purposes, be charged any rent for the use of any property of the Trust;

(c) To improve, repair, and maintain such building after its erection; to set aside portions of the principal or income of this Trust for repairs or replacement, and to set aside portions of the principal and income of this Trust for the retirement of bonds or a mortgage on Trust property or for any other legitimate purpose;

(d) To receive and administer funds and property for the furtherance of the purposes for which this Trust

is established, and for no other purposes, and for that end may take and hold by bequest, devise, gift, purchase or lease, either absolutely or in trust, for such objects and purposes, or any of them, any property, real, personal or mixed, without limitation as to amount or value, except such limitations, if any, as may be imposed by law. The Trustees may sell, convey and dispose of any such property and invest and reinvest the principal thereof, and deal with and dispose of the principal and income thereof, and deal with and dispose of the principal and income therefrom, for any of the before mentioned purposes, without limitation, except such limitations, if any, as may be contained in the instrument under which said property is received, and receive any property, real, personal or mixed, in trust under the terms of any will, deed of trust or other trust instrument for the foregoing purposes or any of them (but not for any other purposes) and administer the same to carry out the directions and exercise the powers contained in the instrument under which said property is received, including the principal as well as the income, for one or more of such purposes as authorized or directed in the trust instrument under which it is received, and to receive, take title to, hold, and use the profits and income of stocks, bonds, obligations or other securities of any corporation or corporations, domestic or foreign, for the foregoing purposes or some of them;

(e) To borrow money for any of the purposes of this Trust, and the Trustees may pledge, mortgage, or assign property of this Trust as security;

(f) To receive and accept in kind and to hold as an investment, as long as they shall deem it advisable, any and all property which may come to them as Trustees hereunder;

(g) To take by purchase, or otherwise, and to hold any real estate which may be necessary or proper for the execution of the Trust; to sell the same at public or private sale; to accept money or money's worth therefor; to bid for and become the purchaser thereof at any public sale and to again sell the same without any liability for any resulting loss; to make partition of real estate forming part of the Trust property, either through legal proceedings or otherwise, even though the Trustees, or any of them, may hold an interest in the same real estate in some other capacity;

(h) To employ such assistants, agents, attorneys and clerical and other help as the Trustees deem desirable and to fix in order paid reasonable compensation to any person so employed and to incur and pay all expenses and obligations deemed by the Trustees necessary or convenient to carry out the purposes for which this Trust is established;

(i) To exchange any real estate at any time constituting any portion of the Trust property at such prices and upon such terms and conditions and for such real or personal property as they shall deem advisable;

(j) To mortgage any real estate at any time constituting any portion of the Trust property on such terms and conditions as may seem to them proper for the payment of taxes and assessments or for the replacement of other liens or for the repair, construction or alteration of buildings thereon and for necessary expenses incident thereto;

(k) To make ordinary and extraordinary repairs and alterations to real estate, to raze old buildings, to erect new buildings, to insure against loss by fire and other casualties and generally to manage real estate as a prudent owner would do;

(l) To invest and reinvest funds in securities and properties suitable for Trust investments;

(m) To change and vary from time to time any investment of personal property, and for this or any other purpose of the Trust to sell any such investment at public or private sale or broker's board with the same right to purchase at public sale and to resell without liability for loss as in the case of real estate;

(n) To consent to or participate in any plan for the reorganization, consolidation, or merger of any corporation of which any securities are held by them, to consent to any contract of lease, mortgage, purchase or sale of property by or between such corporation and any other corporation or person, to exercise any right they may have as the holders of corporate securities, to convert the same into other securities or to acquire additional securities, to make any payments, exchange any securities or do any other act with reference thereto they may deem necessary or proper, and the securities thus held or acquired shall be deemed a proper investment for the Trustees to hold hereunder;

(o) To execute and deliver any proxies, powers of attorney, contracts, deeds, and other instruments necessary or proper in the administration of the Trust property;

(p) To take and retain from the Trust funds received by them a reasonable compensation for their services as Trustees;

(q) To protect the Trust and all property of the Trust and the Trustees' interest therein from attack of any kind and to uphold the validity of all gifts, testamentary or otherwise;

(r) To cause the organization of such corporations or other agencies as may be necessary or proper to carry out the purposes of the Trust;

(s) To exercise the powers herein conferred, either discretionary or otherwise, through representatives appointed by them, and to pay their

reasonable compensation and expenses;

(t) To advise with counsel, and the opinion of counsel in writing signed by him shall be a full protection and justification to the Trustees for anything suffered or done by them in good faith and in accordance with such opinion;

(u) To transfer or convey all assets of this Trust, at the time, including any accumulated earnings, to any one or more of the following:

(i) a governmental unit of the State of Indiana (that is a political subdivision of the State of Indiana) to be used for exclusively public purposes, or to

(ii) a corporation, trust, or community chest, fund or foundation, created or organized under the law of the United States, or of the State of Indiana, organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no part of the activities of which is carrying on propaganda or otherwise attempting to influence legislation, to be used within the State of Indiana exclusively for religious, charitable, scientific, literary or educational purposes, under such restrictions and conditions as will insure the use of the same for the purposes of this Trust, if at any time in the judgment of the Trustees it shall seem wise and prudent so to do.

In no event shall the Trustees be held liable for any neglect or wrongdoing of any agent or agents, provided reasonable care shall have been exercised in their selection, nor shall they be held liable for any loss or damage except that occasioned by their own gross neglect or willful default.

No part of the activities of the Trustees shall be the carrying on of propaganda or otherwise attempting to influence legislation.

3. Paragraphs 1 and 2, above of this Second Amendment of Indenture of Trust shall be deemed to supersede and supplant Paragraph B of the original Indenture of Trust dated January 20, 1956, as amended by First Amendment of said Indenture dated June 17, 1958, and Paragraph C of said Indenture of Trust dated January 20, 1956. Except as so amended hereby said original Indenture of Trust dated January 20, 1956, shall be and remain in full force and effect in accord with the terms and conditions set forth therein.

IN WITNESS WHEREOF this instrument is executed this 16th day of April, 1960.

HULMAN FOUNDATION, INC.

(s) By Anton Hulman Jr.
Its President

ATTEST:

(s) J. R. Cloutier
Its Secretary

DONOR

(s) Thomas J. Doherty
Thomas J. Doherty

(s) Leonard B. Marshall
Leonard B. Marshall

(s) Anton Hulman Jr.
Anton Hulman, Jr.

TRUSTEES

STATE OF INDIANA ⎱ SS:
COUNTY OF VIGO ⎰

Personally appeared before me the within named Anton Hulman, Jr. and J. R. Cloutier, President and Secretary, respectively, of Hulman Foundation, Inc., and acknowledged the execution of the foregoing instrument to be the voluntary

act and deed of said corporation for the uses and purposes therein set forth.

WITNESS my hand and official seal.

(s) Margaret J. Burke
Notary Public

My commission expires:
August 28 1960

STATE OF INDIANA }SS:
COUNTY OF VIGO }

Personally appeared before me the within named ~~Thomas J. Doherty,~~ Leonard B. Marshall and Anton Hulman, Jr., Trustees of the "Hulman Public Building Trust", and acknowledged the execution of the foregoing instrument to be the voluntary act and deed of said Trust for the uses and purposes therein set forth.

WITNESS my hand and official seal.

(s) Margaret J. Burke
Notary Public

My commission expires:
August 28 1960

**Finding of Fact Exhibit B**

**U. S. TREASURY DEPARTMENT**
**Washington 25**
(Seal)

OFFICE OF
COMMISSIONER OF INTERNAL REVENUE

ADDRESS REPLY TO
COMMISSIONER OF INTERNAL REVENUE
WASHINGTON 25, D. C.
AND REFER TO

JUL 18 1960

T:R:EO:2
JAT

Hulman Foundation, Inc.
Wabash Avenue and Ninth Street
Terre Haute, Indiana

Gentlemen:

This is in reference to your application for exemption from Federal income tax as an organization described in section 501(c) (3) of the 1954 Code for 1955 and subsequent years.

Our records disclose that by ruling dated January 12, 1956, your exempt status was revoked for the years 1951 through 1954, inclusive, for having unreasonably accumulated income within the meaning of section 3814 of the 1939 Code which corresponds to section 504 of the 1954 Code. The information now before us discloses that on April 16, 1960, your board of directors unanimously adopted a resolution pledging to transfer to another organization exempt from Federal income tax pursuant to the provisions of section 501(c) (3) of the 1954 Code, a sum equal to the amount of your undistributed earnings reduced by Federal taxes and interest paid during the period January 1, 1951 to December 31, 1959. The resolution also provides that any refund of taxes for the years 1955 and 1956 together with all interest received will be paid to the donee organization within thirty days from the receipt thereof.

Based upon the evidence now before us, we have concluded that you are exempt from Federal income tax as an organization described in section 501(c) (3) of the 1954 Code for 1955 and subsequent years as it is shown that you are organized and operated exclusively for charitable purposes.

You are not required to file Federal income tax returns so long as you retain an exempt status, unless you are subject to the tax imposed by section 511 of the Code and are required to file Form 990–T for the purpose of reporting unrelated business taxable income. Any changes in the character of your organization, the purposes for which you were organized or your method of operation should be reported immediately to the District Director of Internal Revenue for your district in order that their effect upon your exempt status may be determined.

You are required, however, to file an information return, Form 990A, annually, with the District Director of Internal Revenue for your district so long as this exemption remains in effect. This form may be obtained from the district director and is required to be filed on or before the fifteenth day of the fifth

month following the close of your annual accounting period which ends December 31.

Contributions made to you are deductible by the donors in computing their taxable income in the manner and to the extent provided by section 170 of the 1954 Code.

Bequests, legacies, devises or transfers to or for your use are deductible in computing the value of the taxable estate of a decedent for Federal estate tax purposes in the manner and to the extent provided by sections 2055 and 2106 of the 1954 Code. Gifts of property to or for your use are deductible in computing taxable gifts for Federal gift tax purposes in the manner and to the extent provided by section 2522 of the 1954 Code.

No liability is incurred by you for the taxes imposed under the Federal Insurance Contributions Act (Social Security taxes) unless you have filed a waiver of exemption certificate in accordance with the applicable provisions of such Act.

In the event you desire social security coverage for your employees or have any questions relating to the filing of a waiver of exemption certificate you should take the matter up with your District Director of Internal Revenue.

This ruling is conditioned on the understanding that your accumulated income and any refund of taxes together with interest thereon will be dispersed in accordance with the terms of the resolution adopted on April 16, 1960, by your board of directors. In this connection, we should be supplied with a statement showing the amount distributed, the name of the donee organization, and the date of distribution.

The District Director of Internal Revenue for your district is being advised of this action.

Very truly yours,

(s) J. F. Worley

Chief, Exempt Organizations Branch

**Finding of Fact Exhibit C**

## HULMAN FOUNDATION, INC.

STOCKS PURCHASED, REC'D. by GIFT & SOLD 1940–54, inc.

*(Dispositions in parenthesis)*

| By Purchase | 1941–43 | 1944 | 1945 | 1946 | 1947 | 1948 |
|---|---|---|---|---|---|---|
| Richmond Gas Corp. | 57,000.00 | | | | | |
| Indiana National Bank | | | 32,750.00 | | | |
| Hulman Realty Corp. | | | 41,000.00 | | | |
| Ind. Gas & Chem. Corp.-Com. | | | 105,000.00 | 63,536.51 | 155,324.10 | 39,657.75 |
| " " " -Pfd. | | | 227,501.00 | 185,880.19 | 167,804.12 | 28,023.37 |
| Ind. Trust Co. | | | | | | 8,056.00 |
| Merchants Nat'l. Bank | | | | | | 6,000.00 |
| Group Securities | | | | 39,915.00 | | |
| Wabash Valley Broadcasting Corp. | | | | | | 10,906.25 |
| Total purchased less sales | 57,000.00 | | 406,251.00 | 289,331.70 | 323,128.22 | 92,643.37 |
| **By Gift** | | | | | | |
| Hulman & Co. | 1,163,100.00 | | | | | |
| Pittsbg. Coal Co. | | 19,596.00 | | | | (11.16) scrip |
| T. H. Industrial District | | | | | (1,500.00) | |
| " " | | | | | 15,000.00 | (2,250.00) liquidation |
| Total Gifts less sales | 1,163,100.00 | 19,596.00 | | | 13,500.00 | (2,261.16) |
| Stock acct. at yr. end | 1,220,100.00 | 1,239,696.00 | 1,645,947.00 | 1,935,278.70 | 2,271,906.92 | 2,362,389.13 |

| By Purchase | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 |
|---|---|---|---|---|---|---|
| Richmond Gas Corp. | | | | (100.52) | | (1,884.03) |
| Ind. National Bank | | 26,565.00 | | | | |
| Hulman Realty Corp. | 98,400.00 | | | | | |

## HULMAN FOUNDATION, INC.
### STOCKS PURCHASED, REC'D. by GIFT & SOLD 1940–54, inc.

*(Dispositions in parenthesis)*

| | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 |
|---|---|---|---|---|---|---|
| Ind. Gas & Chem. Corp.-com. | 54,394.78 | 18,418.97 | 6,751.60 | | | |
| "  "  "  " | | | (5,400.00) | | | |
| "  "  "  " -pfd. | 6,193.42 | 8,380.48 | (623,835.78) | | | |
| Ind. Trust Co. | | | | | | |
| Merchants Nat'l. Bank | | | | | | |
| Group Securities | | | (39,915.00) | | | |
| Wabash Valley Broadcasting | (6,250.00) | | | | | |
| " | 3,437.50 | (8,093.75) | | | | |
| So. Ind. Gas & Elec. Co. | 780,000.00 | | | | (9,680.58) | (6,764.95) |
| Gagel Realty Corp. | 80,000.00 | 52,500.00 | | | | |
| Tribune-Star Publ. Co.-pfd. | | 1,771,000.00 | | | | |
| "  "  " -com. | | | | | | |
| T. H. Community Corp. | | | 250.00 | | | |
| Deep Vein Coal Co. | | | 18,360.00 | 13,360.00 | 15,860.00 | 25,860.00 |
| T & H Corp. | 10,000.00 | | | | | |
| Meadows Center, Inc. | | | | | 1,000.00 | 9,000.00 |
| Misc. Trans. taxes | | | 2.14 | | 89.49 | |
| Total purchased less sales | 1,026,175.70 | 1,868,770.70 | (643,787.04) | 13,259.48 | 7,268.91 | 26,211.02 |
| By Gift | | | | | | |
| Hulman & Co. | | | 55,501.25 | | | |
| Pittsbg. Coal Co. | (1,250.00) | (3,000.00) | (12,546.29) | | | |
| T H Industrial Dist. | | | (1,000.00) | (500.00) | | |
| Listed Stocks | | 133,750.00 | (133,750.00) | 33,900.00 | | 104,317.58 |
| Hulman & Co. Subs. | | | 135,191.62 | | | |
| Total Gifts less sales | | 130,750.00 | 43,396.58 | 33,400.00 | | 104,317.58 |
| | 1,024,925.70 | 1,999,520.70 | 600,390.46 | 46,659.48 | 7,268.91 | 130,528.60 |
| Stock acct. at yr. end | 3,387,214.83 | 5,386,735.53 | 4,786,345.07 | 4,833,004.55 | 4,840,273.46 | 4,970,802.06 |

Notes: "called" (at Ind. Gas & Chem. Corp.-pfd.); "HPS & JRC rights" (at So. Ind. Gas & Elec. Co., 1954).

**Finding of Fact Exhibit D**

## HULMAN FOUNDATION, INC.

### ACCOUNTS & NOTES RECEIVABLE—YEARS ENDING 1940–54 inc.

| | 1941 | 1942 | 1943 | 1944 | 1945 | 1946 | 1947 |
|---|---|---|---|---|---|---|---|
| E. E. Linburg | 7,500.00 | 7,500.00 | 6,855.48 | 6,030.48 | 5,750.48 | 12,610.48 | 10,840.48 |
| Isaac Walton League | | 13,000.00 | 8,500.00 | 8,000.00 | 7,000.00 | 6,000.00 | 5,500.00 |
| Wabash Valley Broadcasting Corp. | | | | | | | 124,000.00 |
| | 7,500.00 | 20,500.00 | 15,355.48 | 14,030.48 | 12,750.48 | 18,610.48 | 140,340.48 |

(Continued)

| | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 |
|---|---|---|---|---|---|---|---|
| E. E. Linburg | 7,780.48 | 5,780.48 | 2,780.48 | | | | |
| Wabash Valley Broadcasting Corp. | 241,261.19 | 241,261.19 | 237,725.00 | 202,725.00 | 197,725.00 | 177,725.00 | 410,225.00 |
| Richmond Gas Corp. | 80,000.00 | 50,000.00 | — | — | — | — | — |
| Grapette Bottling Co. | | 14,946.00 | 14,946.00 | 14,946.00 | 14,946.00 | 14,946.00 | — |
| Gagel Realty Corp. | | 160,000.00 | 160,000.00 | 128,000.00 | 104,000.00 | 68,000.00 | 44,000.00 |
| T & H Corp. | | 80,000.00 | 80,000.00 | 80,000.00 | 80,000.00 | 50,000.00 | 50,000.00 |
| Ft. Harrison Post #40 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| J. R. Cloutier | | | 8,093.75 | 8,093.75 | 8,093.75 | 8,093.75 | 8,093.75 |
| Wabash Valley Fair Ass'n. | | | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| T. H. Community Corp. | | | | 750.00 | 750.00 | 750.00 | 750.00 |
| Misc. Dividends Due | | | | 1,633.40 | 4,418.60 | 5,222.85 | 5,822.85 |
| C & E I Ry. | | | | | 23,000.00 | 23,000.00 | 23,000.00 |
| Mechanical Suppliers, Inc. | | | | | | 16,000.00 | 16,000.00 |
| R. J. Oil & Refining Co. Inc. | | | | | | 100,000.00 | 225,000.00 |
| Meadows Center, Inc. | | | | | | 7,000.00 | 152,225.49 |
| | 330,041.67 | 552,987.67 | 509,545.23 | 442,148.15 | 438,933.35 | 476,737.60 | 941,117.09 |

